**William F. BUCKLEY, Jr., Plaintiff,**

**v.**

**Gore VIDAL, Defendant.**

**No. 69 Civ. 1933.**

United States District Court,
S. D. New York.

April 27, 1970.

Hellerstein, Rosier & Rembar, New York City, for plaintiff; Charles Rembar, New York City, of counsel.

Fitelson & Mayers, New York City, for defendant; Harold J. Sherman, New York City, of counsel.

## OPINION

LEVET, District Judge.

Plaintiff in this libel action has moved pursuant to Rule 34 of the Federal Rules of Civil Procedure for production of certain papers for inspection and copying.

The papers sought are as follows:

1. All manuscripts and other material written by defendant in 1968 and/or 1969 concerning plaintiff and all drafts and versions thereof, and all changes and revisions thereof.

2. All correspondence, notes, memoranda and other writings to or from Esquire Magazine, Playboy Magazine, the New York Review of Books and/or any other publications, and/or any editor, agent or employee of any such publication, relating to the manuscripts or material as described in the first request above.

3. All reports, notes, memoranda and other writings to or from all persons employed or engaged by defendant to investigate or to do research upon plaintiff and/or members of his family.

4. All material received by defendant since January 1, 1962 from any source relating to plaintiff and/or his family.

5. All material which has served as a basis for defendant's assertions that plaintiff is or was a Nazi, a crypto Nazi, a sexual degenerate, a homosexual, anti-black, anti-Semitic, a warmonger or a war lover.

6. All other material relating to (a) defendant's preparation for and appearance in American Broadcasting Company programs with plaintiff during 1968, (b) defendant's preparation and writing of the article, "A Distasteful Encounter with William F. Buckley, Jr.," and of all manuscripts and versions thereof, and (c) defendant's preparation for, participation in and review, revision or approval of his interview which appeared in the June 1969 issue of Playboy Magazine.

The parties have submitted memoranda and affidavits and have presented oral argument.

Rule 34 provides in pertinent part:

"Upon motion of any party showing good cause \* \* \* the court \* \* may \* \* \* order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to [the subject matter involved in the pending action or which appear reasonably calculated to lead to the discovery of admissible evidence] \* \* \* and which are in his possession, custody, or control \* \*."

Defendant argues that plaintiff's motion should be denied. It appears that defendant's objections focus on three primary areas: (1) First Amendment rights; (2) failure to show requisite "good cause"; and (3) the attorney-client privilege and protection afforded to an attorney's work product. Each of the objections will be treated in turn.

## I.

Defendant maintains that the present action before the court is "one of exceptional character and considerable importance to the parties concerned, as well as to the general public at large." He adds that the action concerns "parties who are recognized nationally as outstanding champions of divergent political and socioeconomic points of view and have engaged in fierce and fearless, long continuing debates which have attracted audiences of millions of people, [and involve] serious matters of great public interest entitled to protection un-

der our Federal constitution." (Affidavit of defendant's counsel, April 13, 1970, pp. 5–6)

At another point, defendant's counsel asserts that both plaintiff and defendant are "capable of rapid-fire sharp, caustic exchanges of commentary and pointed argument, with frequent interspersions of entertaining displays of wit, brilliant flashes of satire and quips conducive to exciting and holding the attention of the vast television audience who are witnessing and hearing such political debates." (Affidavit of defendant's counsel, April 8, 1970, pp. 9–10)

Both parties seem to acknowledge that plaintiff is a public figure who commanded a substantial amount of independent public interest at the time statements at issue were made. See Curtis Publishing Co. v. Butts, 388 U.S. 130, 154–155, 87 S.Ct. 1975, 18 L.Ed. 2d 1094 (1967). If plaintiff is indeed classified as a public figure, then statements bearing on his public conduct[1] are not a valid basis for a successful defamation action if mere falsity is established. Rather, plaintiff would have the burden of showing "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." Curtis Publishing Co. v. Butts, supra at 155, 87 S.Ct. at 1991.[2]

In the case at bar, it seems that plaintiff is obligated to delve into the realm of defendant's conduct, motivation and belief in order to recover, at least with regard to statements directed to public conduct of the plaintiff.

---

1. With reference to statements directed against the private conduct of a public official or private citizen, see New York Times Co. v. Sullivan, 376 U.S. 254, 301–302, 84 S.Ct. 710, 737, 11 L.Ed.2d 686 (1964) (Goldberg, J., concurring) ("Purely private defamation has little to do with the political ends of a self-governing society"); and Curtis Publishing, supra, 388 U.S. at 155, 87 S.Ct. at 1991, where Justice Harlan, in the majority opinion,

states that nothing "we have said touch[es], in any way, libel or other tort actions not involving public figures or matters of public interest."

2. Chief Justice Warren, concurring in the Curtis Publishing case, suggested that statements about public figures dealing with public issues and events should not be actionable absent proof of "actual malice." 388 U.S. at 162–163, 87 S.Ct. 1975.

■■ Although in recent years the Supreme Court has placed stringent burden of proof requirements on a public official or public figure suing for defamation, such plaintiffs may still recover if they sustain their heavy burdens. As long as a cause of action for defamation passes constitutional muster, a plaintiff must be allowed reasonable opportunity for discovery. Defendant's objection to production and inspection on broad First Amendment grounds is therefore overruled.

## II.

■ Defendant maintains that plaintiff has failed to show "good cause" under Rule 34. It is well-settled that the rule, encompassing production of unprivileged materials which are relevant to the subject matter involved in the pending action, is to be liberally construed. 4 Moore's Federal Practice § 34.09, at 2493–2494 (2d ed. 1969).

■ Materials which relate to defendant's basis for making certain statements about plaintiff are relevant to this action. Defendant contends that "various papers and documents * * * [from which any of defendant's statements] * * * allegedly might have originated" are "equally open to plaintiff by independent research or otherwise." (Affidavit of defendant's counsel, April 8, 1970, p. 13) However, as plaintiff's counsel states, "[i]t is not simply the existence of facts, but defendant's possession of information relating to the facts, or his possession of materials from which he could have derived such information, that is critical." (Affidavit of plaintiff's counsel, April 9, 1970, p. 5)

■ The relevance of source material upon which defendant's public statements may be founded is clearcut. Inconvenience to defendant is outweighed by the principal that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper lit-

igation." Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).

■ It should be noted that Rule 34 applies to materials in the possession, custody or control of a party. Production may be ordered when a party has the legal right to obtain papers, even though he has no copy, and regardless of whether a paper is beyond the jurisdiction of the court. See Wright, Federal Courts, § 87, at 386–387 (2d ed. 1970).

■ Defendant contends that the date of January 1, 1962, mentioned in plaintiff's request # 4, involves "a rather remote time period, considering that the public debates between plaintiff and defendant occurred in the summer of 1968." (Affidavit of defendant's counsel, April 8, 1970, p. 6) Plaintiff counters by stating that defendant's public references to plaintiff began "at least as early as January 1962, when defendant, appearing on a nationwide television broadcast, made statements about plaintiff." (Affidavit of plaintiff's counsel, April 2, 1970, p. 5) In light of the nature of this action and the burden of proof that may be imposed on plaintiff, as discussed above, I do not believe the 1962 date is too remote.

■ Defendant seems to suggest that plaintiff should proceed by subpoena duces tecum in connection with the taking of a deposition of the defendant instead of moving for production pursuant to Rule 34. However, the court knows of no rule precluding a Rule 34 motion prior to the taking of a deposition.

■ Defendant reportedly spends considerable time abroad. In view of the attendant postponements of the taking of his deposition and in furtherance of the goal of expediting this litigation, a motion under Rule 34 is appropriate.

■ After studying the circumstances presented, the court believes that defendant's objection to production on the

ground that "good cause" has not been shown should be overruled.[3]

### III.

Defendant's counsel maintains that "confidential advice and communications from my firm to defendant as regards various matters in issue herein" should be shielded from discovery because of the attorney-client privilege. (Affidavit of defendant's counsel, April 8, 1970, p. 6)

The attorney-client privilege extends to confidential communications between attorney and client. Communications from attorney to client, as well as from client to attorney, are within the scope of the privilege. 8 Wigmore, Evidence § 2320 (McNaughton Rev. 1961); Natta v. Hogan, 392 F.2d 686, 692–693 (10th Cir. 1968); 8 in 1 Pet Products, Inc. v. Swift & Co., 218 F. Supp. 253 (S.D.N.Y.1963); see also CP LR § 4503(a); Matter of Creekmore, 1 N.Y.2d 284, 296, 152 N.Y.S.2d 449, 135 N.E.2d 193 (1956).

Accordingly, material protected by the attorney-client privilege is not subject to discovery by plaintiff.

Defendant's counsel also maintains that "confidential results of investigations made by my firm as defendant's attorneys through independent investigators" and "confidential notes and memoranda embracing impressions, thoughts, analytical comments as defendant's attorneys in preparing for the trial of this litigation" should be considered part of the attorney's work product.

This court cannot determine from the generalizations offered above by defendant's counsel whether any papers might properly be deemed to constitute "work product" within the meaning of the general rule pronounced in Hickman v. Taylor, supra. Nor can the court decide from the presentation to date by plaintiff's counsel whether plaintiff is able to show necessity and justification for production so as to overcome the qualified protection afforded material classified as attorney's work product.

Accordingly, I conclude as follows:

Plaintiff's motion for production of materials in the possession, custody or control of defendant as outlined in plaintiff's six requests is granted, with the exception of any material claimed by defendant to come within the ambit of the attorney-client privilege or the attorney's work product rule. Such materials as may be disputed are to be delivered by defendant's counsel to my chambers, Room 2103, for inspection in camera and determination of defendant's claims.

Settle order on notice promptly.

---

3. Rule 34, as amended, effective July 1, 1970, eliminates the requirement of "good cause." Although the instant motion is decided under the existing version of the rule, the amendment serves to indicate the trend in federal discovery practice.